**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-23425-Civ-COOKE/TORRES**

LESLIE REILLY, an individual,
on behalf of herself and all others
similarly situated,

      Plaintiff,

v.

CHIPOTLE MEXICAN GRILL, INC., a
Delaware corporation,

      Defendant.

_____/

**DEFENDANT CHIPOTLE MEXICAN GRILL INC.'S MOTION TO EXCLUDE
OPINIONS OF PLAINTIFF'S EXPERT WITNESS DR. CATHERINE ADAMS HUTT
AND INCORPORATED MEMORANDUM IN SUPPORT**

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") moves the Court to exclude the
opinions of Plaintiff's Expert Witness Dr. Catherine Adams Hutt as set forth herein and
respectfully submits the incorporated memorandum in support of its Motion as follows:

## I.     INTRODUCTION

Plaintiff's retained expert, Dr. Catherine Adams Hutt ("Dr. Hutt"), offers numerous
opinions in her compilation of summary reports, expert reports, deposition testimony, and
declarations that must be excluded because they are neither reliable nor relevant.  She
attempts to usurp the roles of the Court and the jury, and her opinions are not helpful to the
finder of fact. Further, her opinions ask the jury to rely on irrelevant information, apply
inapplicable standards, and consider inadmissible hearsay.

First, Dr. Hutt's opinions regarding the alleged perceptions of the "reasonable
consumer" should be excluded because they lack foundation and usurp the role of the jury.
Dr. Hutt is not an expert on consumer perception and she fails to substantiate or to provide
any reliable data or analysis supporting her conclusions that consumers would be deceived
by Chipotle's non-GMO representations.  Rather than conduct any consumer study about
how consumers understand Chipotle's representations that it prepares its food with non-

GMO ingredients, Dr. Hutt instead relies on regulations and voluntary verification standards of private third party organizations that do not apply to Chipotle or restaurants. For example, Dr. Hutt relies on the standard for "organic" – which specifies that organic milk must come from dairy cows that have not consumed genetically modified feed.  That such a standard exists says nothing about what consumers understood when Chipotle represented that the ingredients in its food are "non-GMO."  Further, to the extent Dr. Hutt's opinions constitute an ultimate legal conclusion, they invade the province of the Court, and the Court should exclude them on this independent basis.

Second, Dr. Hutt's opinions about the application of, or Chipotle's compliance with, the USDA Food Safety and Inspection Services ("USDA-FSIS") standards should be excluded as irrelevant.  Those standards do not apply to restaurant menu items. Moreover, to the extent Dr. Hutt's opinions attempt to apply a body of law to govern Chipotle's representations, the Court should exclude the opinions because they are impermissible legal conclusions, invading the province of the Court to instruct the jury regarding the law to be applied in reaching their verdict.

Third, Dr. Hutt's opinions that the National Organic Program's standards or voluntary third-party labeling standards apply to Chipotle's representations should be excluded as irrelevant.  The representations at issue in this lawsuit do not involve Chipotle claiming that it complies with those programs (the USDA's "Organic" Seal or the Non-GMO Verified Project's Butterfly).

Finally, Dr. Hutt's opinions that simply parrot the opinions of Dr. John Engeljohn are irrelevant and constitute inadmissible hearsay. These opinions are irrelevant because of their reliance on the inapplicable standards. Moreover, the hearsay opinions given by Dr. Engeljohn and adopted by Dr. Hutt have a high likelihood of confusing the jury while failing to advance any material facts.

For these reasons, Chipotle respectfully requests the Court exclude Dr. Hutt's opinions as set forth below.

## II.   SOURCES OF DR. HUTT'S OPINIONS

Plaintiff has proffered Dr. Hutt's opinions in three documents: 1) her June 17, 2016, "Summary of My Expert Opinion" filed in support of Plaintiff's Motion for Class Certification (Decl. of Sascha Henry, attached as **Exhibit A**, hereinafter "Henry Decl;" at ¶ 3; Ex. B, hereinafter "Summary Report"); 2) her June 24, 2016, "Summary of My Expert Opinion," a revised version of her June 17, 2016, report filed pursuant to Fed. R. Civ. P. 26(a)(2) (Henry Decl. ¶ 4, Ex. C, hereinafter "Expert Report"); and 3) her July 5, 2016, declaration and attachments (Henry Decl. ¶ 4; Ex D, "Engeljohn Emails"). Dr. Hutt also testified about her opinions when Chipotle deposed her. (Henry Decl. ¶ 2; Ex A, hereinafter "Hutt Depo.").

## III.   APPLICABLE LEGAL STANDARDS

Federal Rule of Evidence 702, as explained by *Daubert v. Merrell Dow. Pharms.*, 509 U.S. 579 (1993) and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005). "Under Rule 702 and *Daubert,* district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink,* 400 F.3d at 1291 (quoting *Daubert,* 509 U.S. at 589).

Expert evidence is admissible only when it is both reliable and relevant.  To be reliable, the following factors must be met: (1) the expert is qualified to testify competently regarding the matters she intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.* (internal quotations omitted). The party offering the expert must prove admissibility– under these three prongs–by a preponderance of the evidence. *Id.*

Under the first prong, "experts may be qualified in various ways." *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). Therefore, "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260–61. "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.,* 2009 WL

2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co.,* 255 F.R.D. 568, 585 (N.D. Fla. 2009)).

Under the second prong, courts have set forth the following list of *nonexclusive* factors to assist in determining whether an expert's methodology is reliable: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Rink,* 400 F.3d at 1291 (citing *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech,* 326 F.3d at 1341.

Under the third prong, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63. "[W]here an expert opinion has a tendency to confuse the trier of fact, it may not satisfy the helpfulness prong." *J.G. v. Carnival Corp.*, 2013 WL 752697, at *4 (S.D. Fla. Feb. 27, 2013) (citing *Frazier,* 387 F.3d at 1263). Moreover, to assist the trier of fact, "'[e]xpert testimony must be relevant to the task at hand, … *i.e.,* that it logically advances a material aspect of the case.'" *Coral Way, L.L.C. v. Jones,* 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (quoting *McDowell v. Brown,* 392 F.3d 1283, 1299 (11th Cir. 2004)).

## IV.   ARGUMENT

### A.   Dr. Hutt's "Reasonable Consumer" Opinions Must Be Excluded Because They Lack Foundation, Are Not Based on Sufficient Facts or a Method Reliably Applied, Usurp the Role of the Jury, and Constitute Impermissible Conclusions.

Dr. Hutt consistently opines regarding the purported perceptions and opinions of "reasonable consumers." (*See* Summary Report at p. 3, ¶ 3; 6 ¶¶ 1-4, and internal references, *passim*; Expert Report at p. 2, ¶¶ 3-4; pp. 6-7, and internal references, *passim*, together Dr. Hutt's "Reasonable Consumer Opinions"). Dr. Hutt's Reasonable Consumer Opinions are not reliable, they lack foundation, are speculative, usurp the role of the jury, and offer improper ultimate and/or legal conclusions.

4

First, the Reasonable Consumer Opinions are devoid of any foundation and are nothing more than Dr. Hutt's subjective, speculative opinions. Part of the Court's gate-keeping duty inherently requires it to conduct an exacting analysis of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702. *Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

In *F.T.C. v. Washington Data Res.*, 2011 WL 2669661, at *2 (M.D. Fla. 2011),[1] an expert tendered by the defense concluded that a "reasonable consumer was not likely to be misled by the actions or marketing practices of [defendants]." 2011 WL 2669661 at *2. There, the expert reviewed a small portion of deposition testimony, transcripts of telemarketing phone calls, sample postcards, and an "application for legal service." The expert did not review any consumer declarations, applicable legal precedent, complete deposition testimony, additional marketing materials, or business records. The Court found the expert's "opinions" inadmissible, stating:

> [The expert's] conclusion as to the perception of a "reasonable consumer" appears purely speculative, apart from any scientific or technical knowledge or method, and unhelpful because the speculation rests entirely on [the expert's] unlearned prediction of consumer reaction and consumer perception. [The expert's] proposed testimony concerns a matter within the ken of the fact finder, subject to primary evidence from consumers, and to which [the expert] adds not reliable expert opinion but only one person's opinion, which is no better than another person's opinion. Although perhaps qualified to provide "expert" opinion on some issue or in some case, [the expert] offers to this case testimony that concerns no matter "beyond the understanding of the average lay person" and that appears incomplete, unreliable, and unhelpful to the identification of a deceptive marketing practice.

*Id.*

The situation before the Court is almost identical to that in *Washington Data*, namely Dr. Hutt's Reasonable Consumer Opinions are purely speculative and devoid of scientific or technical foundation.

---

[1] Although the Court's "reasonable consumer" analysis in that case was done under the FTC Act, the FDUTPA, or "Little FTC Act," is analyzed under a nearly identical framework. *See generally In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices,* 715 F. Supp. 2d 1265, 1277 (S.D. Fla. 2010), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 Fed. Appx. 849 (11th Cir. 2011) ("FDUTPA closely resembles Section 45(a)(1) of the FTC Act.").

Dr. Hutt did not conduct any investigation regarding the perceptions of reasonable consumers. (Hutt Depo, 207:12-17; 172:8-14). She did not survey consumers about how they interpret Chipotle's representations that the food it prepares is made with non-GMO ingredients.  She did not survey what consumers understand "GMO" or "non-GMO" to mean.  At no point did she obtain any evidence that consumers understand "non-GMO ingredients" to mean not only that the meat and dairy come from animals that are not themselves genetically modified, but also that the feed the animals eat is not genetically modified. She was also unaware of *any* survey regarding consumer perception about whether "GMO" means simply ingredients themselves or also refers to animals that consume GMO feed. (*Id.*, 74:17-23; 206:14-207:2). Similarly, she was unaware of any survey evidence regarding what a consumer understands the term "non-GMO" to mean. (*Id.*, at 176:7-12).

Dr. Hutt's investigation into the perceptions of reasonable consumers regarding their understanding of GMOs is nonexistent. She claims to have investigated consumer perceptions by "conduct[ing] internet searches for evidence of consumer awareness of non-GMO labeling and non-GMO (but not organic) meats available in the marketplace." (*See e.g.* D.E. 95, Ex. I at 5; Expert Report at p. 9). However, she does not recall locating anything specific about consumer awareness by virtue of her internet research and is clear that she did not rely on anything from her internet searches in forming her opinions.  (Hutt Depo. p. 205:1-17).

Dr. Hutt's reliance on her professional experience does not make up for the lack of sufficient foundational facts and data to provide the Reasonable Consumer Opinions.  In Dr. Hutt's report, she states she's "incorporated knowledge of consumer perceptions of GMO gained through work as Chief Science and Regulatory Officer for Sloan Trends, a firm specializing in consumer trends and market analysis for the food and dietary supplement businesses[sic]." (D.E. 95, Ex. I at 6; Expert Report, at p. 9). However, with respect to her "knowledge of consumer perceptions," Dr. Hutt testified that the only documents she reviewed were presentations made in conjunction with Sloan Trends' projects for Wal-Mart and Watson, Inc. (*Id.,* 170:24-171:1). She could not recall reviewing any other documents or information on consumer perception other than reviewing those presentations—neither of which has any relevance to this litigation. (*Id.,* at 171:5-6).

Despite her clear admissions that she did nothing to ascertain what "reasonable consumer" perceptions are, at her deposition, Dr. Hutt regularly took the position that "consumers expect standards to be consistent, especially when they're regulated by authoritative bodies, and that standard that is relevant to non-GMO -- the statement about non-GMO ingredients consistently includes that the animals not be fed genetically modified feed." (*Id.*, 73:21-74:6). As she later conceded, however, even the standards she purports to rely upon are themselves inconsistent. For example, she concedes that the National Organic Program requires that milk-producing cows consume only non-GMO feed for their entire lives in order for the dairy to qualify as "non-GMO." In contrast, under the Non-GMO Verified Project, the same cow need only consume non-GMO feed for 30 days to qualify as "non-GMO." (*Id.,* 152: 13-p. 154:1; 150:3-11). Dr. Hutt concedes she has "no knowledge" of whether consumers understand this difference. (*Id.*, 151:20-152:2).

Notably, Dr. Hutt had difficulty even articulating who she believes to be a reasonable consumer. During her deposition, Dr. Hutt relied on an FDA definition of the term "reasonable consumer" typically used for the purposes of FDA regulation, but could not articulate what a reasonable consumer population would consist of in this case, nor could she commit to what types of percentages qualified as a majority of reasonable consumers. (*See generally* Hutt Depo., 172:16-175:14).

Like the expert in *Washington Data*, Dr. Hutt's Reasonable Consumer Opinions are unfounded speculation. She has no specialized knowledge regarding consumer perceptions and gleaned the totality of her understanding of reasonable consumer perception in this case from reviewing presentations directed to Wal-Mart and Watson, Inc., projects for her former employer. Plaintiff has not disclosed these presentations, and Dr. Hutt could not discuss them in detail, nor did she bother to bring either to her deposition. (*Id.*, 171:24-172:2; Henry Decl. at ¶ 2). Moreover, Dr. Hutt could not clearly define a reasonable consumer and she conducted no surveys regarding the perceptions of any consumers in formulating her opinions for this litigation.[2]

---

[2] Chipotle anticipates that Plaintiff will argue that Dr. Hutt's opinions should be admissible despite the absence of any survey evidence on point to the representations at issue in this case, and point to Chipotle's expert, Mary Mulry, Ph.D., who, like Dr. Hutt, did not conduct a consumer survey.  Chipotle proffered Dr. Mulry directly to rebut Dr. Hutt's opinions by identifying the other standards that exist relating to GMOs (such as the state

Second, the Court should strike the Reasonable Consumer Opinions for the additional reason that they impermissibly usurp the jury's fact-finding role by telling them how to find. To prove a deceptive or unfair business practice under her FDUTPA claim, Plaintiff must demonstrate that there has been a "'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick. v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Id.* (quoting *Millennium Comm. & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Plaintiff attempts to meet her burden by having Dr. Hutt simply opine – without foundation – regarding the purported perceptions and opinions of the reasonable consumer.  Essentially, Plaintiff asks this Court to allow her, through Dr. Hutt, simply to tell the jury that they must find in her favor with respect to this essential element of her FDUTPA claim.  This is inappropriate. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63. Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves. *Hibiscus Associates Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995). The Middle District of Florida recently found expert opinions regarding the perceptions of "reasonable consumers" improper. *See Washington Data* 2011 WL 2669661, at *2 (excluding expert as to whether the "reasonable consumer" was deceived because opinion testimony was mere speculation, adding no more to what a lay person could conclude from the review of the alleged marketing).

---

laws and current federal bill that exempt animal feed when defining which foods should be labeled as "GMOs").  Chipotle's position is that Dr. Hutt's testimony is inadmissible, but if the Court were to allow it, so, too, should Chipotle be allowed to present Dr. Mulry to describe the other standards, not acknowledged by Dr. Hutt, that undermine Dr. Hutt's opinions.

Here, Dr. Hutt's Reasonable Consumer Opinions are no more valid than those of any juror. While Chipotle does not dispute Dr. Hutt is an expert in something, she certainly is not an expert in perceptions of the "reasonable consumer" with respect to the issues presented by this action.  Her testimony only "tells the jury what result to reach" with respect to a critical element of Plaintiff's claim and, is thus, improper. The perceptions of a reasonable consumer are exactly what Plaintiff's counsel is required to argue to the jury, so Dr. Hutt's Reasonable Consumer Opinions therefore do not qualify as expert testimony here.

Dr. Hutt's Reasonable Consumer Opinions are also inadmissible for the independent reason that they offer conclusions of law. To the extent Dr. Hutt opines about the law or relies on statutory frameworks or regulatory schemes to support the Reasonable Consumer Opinions, Dr. Hutt's testimony constitutes inadmissible legal conclusions.  It is solely within the province of the Court to instruct the jury as to the law.  Again, "[a]n expert may not … merely tell the jury what result to reach" or "testify to the legal implications of conduct; the court must be the jury's only source of law."  *Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (holding the district court had abused its discretion by allowing expert to testify about the scope of insurer's duty under a policy).

Here, Plaintiff has the burden of proving Chipotle's representations misled the "reasonable consumer." The issue of whether Plaintiff has met this burden is an inquiry reserved for the finder of fact—not Plaintiff's retained expert. To allow Dr. Hutt to opine that an essential element of Plaintiff's claim is satisfied based on her unfounded, personal opinion regarding the applicability of irrelevant standards usurps the role of the jury and injects improper legal inferences into the trial, posing the risk of appealable error.

**B.      Dr. Hutt's Opinions Regarding USDA-FSIS and Third-Party Certification Programs' Standards Must Be Excluded.**

Dr. Hutt also opines that labeling standards promulgated by the United Stated Department of Agriculture Food Safety Inspection Services division and third-party private organizations indicate that Chipotle's "non-GMO ingredients" representations are misleading.

The Court should exclude Dr. Hutt's testimony regarding both the USDA standards and the third-party standards because they are inapplicable, irrelevant, and will lead to juror confusion.

    1.   <u>The USDA Standards Do Not Apply.</u>

Dr. Hutt clearly admits the USDA, "does not have jurisdiction over the menu items in restaurants." (Hutt Depo., pp. 32:25-33:5; Expert Report at p. 5, ¶ 1; *see also* 21 U.S.C. § 607(d); 9 CFR § 317.4; 9 CFR §§ 317 *et seq*; 9 CFR §§ 381.115 *et seq*. [USDA-FSIS prior approval program relates to *labeling* of meat and poultry products]). Nevertheless, she consistently opines that the USDA-FSIS standards are somehow relevant to Plaintiff's claims.

This is not a case involving the labeling of pre-packaged food, and it is undisputed the USDA standards do not apply to Chipotle's menu items. Accordingly, the USDA standards are irrelevant, and interjecting them into the trial of this matter would be improperly prejudicial under to Chipotle. *See* Fed. R. Evid. 401, 402, 403 and 702. Permitting the jury to hear lengthy testimony premised on inapplicable standards will not be helpful, nor does it have the potential to advance any material aspect of Plaintiff's claims.

The USDA standards do not apply to restaurant menu items, the products at issue in this litigation, and they therefore do not apply here. *See* 21 U.S.C. § 607(d); 9 CFR § 317.4; 9 CFR §§ 317 *et seq*; 9 CFR §§ 381.115 *et seq*. However, to the extent there is a question as to whether the USDA standards apply, which Chipotle disputes, that is a question left to the sole province of the Court, and Dr. Hutt's opinions regarding the application of the law usurp that role. Thus, the Court must exclude Dr. Hutt from opining on the USDA standards or Chipotle's compliance or non-compliance therewith because her opinions on those issues are both irrelevant and usurp the role of the Court.

Moreover, the Court should exclude testimony regarding the USDA standards for the independent reason that it will not be helpful to the jury and will pose a high likelihood for juror confusion. If the Court permits Dr. Hutt to testify regarding the USDA standards, the jury will be required to hear about standards that do not apply to Chipotle's menu from a Ph.D. and former government executive at the USDA. Dr. Hutt is well-credentialed, and thus the risk of unfair prejudice to Chipotle caused by the jury placing undue weight on her opinions, regardless of their substance, is high. Furthermore, because the USDA standards

do not apply, they cannot be used to advance any material element of Plaintiff's claim.  To permit Plaintiff's expert to offer opinions regarding Chipotle's alleged non-compliance with an inapplicable statutory framework invites error.

      2.  <u>Evidence of Standards Promulgated by Third-Party Certification Programs Are Irrelevant and Will Lead to Juror Confusion.</u>

Similarly, Dr. Hutt's opinions that definitions generated by private third-party non-GMO-labeling programs or the National Organic Program apply to Chipotle's "non-GMO ingredients" representations should be excluded.  There are no allegations in this case that Chipotle's challenged "non-GMO ingredients" representations referred to either the private third-party non-GMO labeling programs or the federal "organic standard."

In the absence of any allegations or evidence indicating Chipotle represented its food complied with these third-party standards, and in the absence of any authority indicating Chipotle was required to comply with these standards, Dr. Hutt's testimony based on the these third-party standards is highly irrelevant, and for the same reasons discussed above, has the clear potential to mislead the jury while not assisting to advance any material fact to support Plaintiff's case.

      ***C.  The Opinions of Dr. Daniel Engeljohn Must Be Excluded Because They Are Irrelevant and Constitute Inadmissible Hearsay.***

Finally, the Court should exclude all opinions based on Dr. Hutt's supplemental declaration purportedly adopting her discussions with Dr. Engeljohn, the Assistant Administrator for the Office of Policy and Program Development at the USD-FSIS, because they rely solely on the inadmissible USDA standards and third-party standards, are inadmissible hearsay, and will not assist the jury in any way. (Henry Decl. at ¶5; Ex. D)

First, Dr. Engeljohn represents to Dr. Hutt that the Non-GMO Verified Project—with whom Chipotle has never claimed affiliation with respect to its meat and dairy ingredients—presented information to USDA-FSIS in 2012 and that USDA-FSIS approved a version of that program's tendered label. However, he states unequivocally that there exists no policy documents requiring non-GMO-labeled products be verified by either the Non-GMO Verified Project or any other third party program. (*Id.* at D.E. 93-1, p. 2). Despite this, Plaintiff cites Dr. Engeljohn's emails with Dr. Hutt for the proposition that: "[a]s Dr. Daniel L. Engeljohn, the Assistant Administrator of the USDA explained, as of

2013, 'no genetically-engineered livestock were allowed to be slaughtered for human consumption. Thus, a non-GE label specific to meat (not the feed) would have been considered misleading because no meat was genetically engineered. A label specific to animals never being fed genetically engineered feed could be verified, and thus, would not be misleading.'" (D. E. 94, at 10). Thus, Dr. Engeljohn's statements to Dr. Hutt do not stand for the proposition for which she seeks to rely on them. Moreover, as set forth above, the discussion between Drs. Engeljohn and Hutt improperly considers irrelevant standards. The Court should exclude these discussions in their entirety.

Next, in addition to its objections regarding the applicability of USDA and third-party standards, the Court should exclude Dr. Hutt's opinions based on the Engeljohn Emails for the additional reason that they are nothing more than the hearsay testimony of Dr. Engeljohn and his colleagues. Dr. Engeljohn's email string with Dr. Hutt is not only hearsay, but in some instances hearsay upon hearsay—for example, Dr. Engeljohn states "my labeling subject matter experts reminded me . . ." indicating he, too, relied on hearsay information. While Federal Rule of Evidence 703 allows experts to rely upon data which itself would not have been admissible, if this data is of a type reasonably relied upon by experts in the particular field in forming opinions, the Rule does not permit Dr. Hutt's use of hearsay here. Indeed, Dr. Hutt gives lip service to the Rule, and attempts to sweep Dr. Engeljohn's testimony under its purview in her declaration, stating that "the email correspondence and phone conversation with Dr. Engeljohn are the type of data and [sic] material regulatory scientists such as myself typically consider and rely upon in the field." (D.E. 93, at ¶ 4).

Dr. Hutt's representations are not credible. The first email Dr. Hutt had with Dr. Engeljohn was on June 28, 2016, days after her Fed. R. Civ. P. 26(a)(2) report was submitted. In fact, based on the timing, Dr. Hutt could not have relied on the Engeljohn Emails in drafting her report on June 24, 2016. Further, it appears as though Dr. Hutt merely adopts the opinions of Dr. Engeljohn, failing to provide any of her own expert analysis. *See United States v. Garcia*, 447 F.3d 1327, 1336–37 (11th Cir. 2006) (discussing *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003) where the court recognized that "an expert [is permitted] to rely on hearsay evidence for the purposes of rendering an opinion based on his expertise," but excluding testimony where "the expert was repeating hearsay

evidence without applying any expertise whatsoever."). Here, the Court should strike Dr. Hutt's apparent wholesale adoption of Dr. Engeljohn's emails as impermissible hearsay because there is no indication that Dr. Hutt applied any of her own expertise to the information contained in the Engeljohn Emails.

Finally, Dr. Engeljohn's testimony, parroted through Dr. Hutt, will not assist the finder of fact in any way. Indeed, Plaintiff's references to Dr. Engeljohn's correspondence appear to be an attempt to indirectly present opinion testimony by a high-ranking government executive regarding the inapplicable standards. Permitting Dr. Hutt to regurgitate her hearsay communications with Dr. Engeljohn creates the risk of unfair prejudice to Chipotle and would not assist the jury's understanding of the case in any material way. *See e.g. In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 2010 WL 6363027, at *7 (S.D. Fla. Sept. 9, 2010) (striking testimony where an expert merely parroted evidence from other sources to the jury with his "stamp of approval" based on experience). Here, the potential for prejudice to Chipotle by allowing this testimony is apparent. A jury listening to Dr. Hutt's testimonial recount of her discussions with a government executive could easily place undue weight on the opinions of either Dr. Hutt or Dr. Engeljohn and draw the improper interference that the United States government agrees with Dr. Hutt's positions on the USDA standards and the third-party standards. Such an inference is improper and does nothing to further the salient issues in case. Accordingly, the Court should exclude the opinions of Dr. Hutt related to her discussions with Dr. Engeljohn in the Engeljohn Emails and Dr. Hutt's supplemental declaration.

## V.    CONCLUSION

For the foregoing reasons, Chipotle respectfully requests that the Court grant its Motion and exclude Dr. Hutt's opinions regarding: 1) the alleged perceptions of "reasonable consumers;" 2) the applicability of, and compliance with, USDA-FSIS standards; 3) the applicability of, and compliance with, standards promulgated by private third party labeling organizations and the National Organic Program; and 4) those opinions provided by Dr. Daniel Engeljohn.

Dated:  July 29, 2016

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.

MESSNER REEVES, LLP

SHEPPARD, MULLIN, RICHTER &
HAMPTON, LLP

By:   */s/ Kelly R. Melchiondo*_____
        STEARNS WEAVER MILLER
        WEISSLER ALHADEFF &
        SITTERSON, P.A
        Carlos J. Canino, Esq.
        Florida Bar No. 507172
        ccanino@stearnsweaver.com
        Kelly Ruane Melchiondo, Esq.
        Florida Bar No. 0582603
        kmelchiondo@stearnsweaver.com
        Museum Tower
        150 West Flagler Street
        Suite 2200
        Miami, FL 33130
        Tel.: (305) 789-3200
        Fax: (305) 789-3395

        MESSNER REEVES, LLP
        Charles C. Cavanagh, Esq.
        (*Pro Hac Vice*)
        ccavanagh@messner.com
        1430 Wynkoop Street, Suite 300
        Denver, CO 80202
        Tel.: (303) 623-1800
        Fax: (303) 623-0552

        SHEPPARD, MULLIN, RICHTER &
        HAMPTON, LLP
        Sascha Henry, Esq.
        (*Pro Hac Vice*)
        shenry@sheppardmullin.com
        333 South Hope Street, 43rd Floor
        Los Angeles, CA 90071
        Tel.: (213) 620-1780
        Fax: (213) 620-1398

        *Attorneys for Chipotle Mexican Grill, Inc.*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 29, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.


By   */s/ Kelly R. Melchiondo*
　　　　Kelly R. Melchiondo


## SERVICE LIST

Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel, P.A.
sengel@harkeclasby.com
Howard M. Bushman, P.A.
hbushman@harkeclasby.com
**Harke Clasby & Bushman, LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138

*Attorneys for Plaintiff Leslie J. Reilly*

15